UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| TOWN OF GOODLAND, an Indiana municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 4:13-cv-82 |
| THE KESSLER TANK CO., INC., an Ohio corporation, | ) ) ) ) | |
| Defendant. | ) | |

## **OPINION & ORDER**

This case arises from the sudden collapse in 2011 of a 300,000-gallon water tower in the Town of Goodland, Indiana. Goodland objects to a decision by Magistrate Judge Martin denying a motion to extend the deadline for disclosing testifying experts and to his order denying reconsideration. (DE 95.) The town was required to disclose its experts by February 2, 2015, but missed the deadline—Goodland says because of a simple oversight. By the time the town asked for an extension, more than three months had passed, and The Kessler Tank Co. had put its cards on the table by disclosing its own expert and producing his report. Judge Martin denied Goodland's motion, finding the delay in requesting an extension "was fully within its control . . . and appears to be due either to extreme neglect or intentional gamesmanship" and that Kessler would be prejudiced if Goodland were allowed to disclose an expert and proffer an expert report

so late in the game. (DE 72.) Because Judge Martin's decision was not clearly erroneous or contrary to law, Goodland's objection is denied.

## Review of Magistrate Judge Rulings

Federal Rule of Civil Procedure 72(a) governs review of magistrate judge rulings on non-dispositive matters and authorizes a district court to modify or vacate an order that is "clearly erroneous or contrary to law." Rule 72(b) governs magistrate judge rulings on dispositive matters and provides for *de novo* review by the district court. Arguments in Goodland's briefing were based on Rule 72(a)'s clear error standard, but Goodland argued at the May 26, 2016 hearing that Rule 72(b)'s *de novo* standard applies because Judge Martin's order denying the discovery extension will inevitably lead to dismissal of the case. I disagree.

To begin with, the enabling statute for Rule 72 lists motions a magistrate judge may not handle, and that list does not include motions for extensions of discovery deadlines. 28 U.S.C. § 636(b)(1)(A). In addition, Rule 72 relies on the customary difference between how magistrate judges handle matters that are not dispositive of a claim or defense and those that are by referring in subdivision (a) to "written orders and decisions"—*i.e.*, determinations that take immediate effect when the magistrate issues them—and in subdivision (b) to "recommended dispositions" that require action by a district court. Add to that the fact that, across the country, magistrate judges routinely hear and decide discovery matters like this one without any real involvement

2

by the district court. *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) (holding that motions for sanctions for discovery violations are nondispositive, except perhaps where the sanction would "fully dispose[] of a claim or defense"); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'nondispositive[.]'") (citation omitted); *see also Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992); *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).

Judge Martin entered an order on a routine discovery issue—whether to grant an extension on a blown deadline. He did not dismiss any claim or the case, and his order does not bar the plaintiff from continuing to pursue the action. Goodland might be right that it can't win the case without its expert. But that doesn't make Judge Martin's order "dispositive." It's how the plaintiff has structured its case and what evidence the plaintiff has marshaled that will determine whether the case still has wheels. *See Jesselson v. Outlet Assocs.*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991); *Ferriso v. Conway Org.*, 1995 WL 580197, at *1 (S.D.N.Y. Oct. 3, 1995); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 456 (D.N.J. 1998) (reviewing magistrate judge's evidentiary determinations regarding expert testimony as non-dispositive orders, "even where they may ultimately affect the outcome"); *Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 306 (N.D. Iowa 2005) (rejecting argument that magistrate's order on motion for leave to file expert report was on a dispositive matter and applying Rule 72(a)'s clear error standard).

The situation Goodland finds itself in is very similar to that of the plaintiffs in a case considered last year by the Seventh Circuit. In *Hassebrock v. Bernhoft*, 815 F.3d 334 (7th Cir. 2016), the magistrate judge had denied a motion for leave to file an expert report after the discovery cutoff. *Id.* at 339. The plaintiffs appealed to the district court, and the defendant moved for summary judgment on grounds that the plaintiffs could not meet their burden of proof without expert testimony. *Id.* at 340. The district court reviewed the magistrate's decision for clear error and affirmed it. *Hassebrock v. Bernhoft*, Case No. 3:10-cv-679 (S.D. Ill. Aug. 25, 2014) (DE 185 at 4, 9). In the same order, the district court also granted summary judgment to the defendant because the plaintiffs could not establish the standard of care without an expert. *Id.* at 11. Even though the nearly immediate consequence of the magistrate judge's discovery ruling was summary judgment, the Seventh Circuit affirmed the district court's review under Rule 72(a). 815 F.3d at 340–41 (finding no abuse of discretion). The situation is no different here: Judge Martin's discovery ruling was itself non-dispositive, even if a natural result of it is summary judgment against Goodland or dismissal under Rule 12(b)(6). Accordingly, I will use Rule 72(a)'s clear error standard.

## **Judge Martin's Ruling**

The question, then, is whether Judge Martin's ruling denying Goodland an extension of the deadline to disclose its testifying expert was clearly erroneous or contrary to law. "To be clearly erroneous, a decision must strike us as more than just

4

maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. . . . [It] must be dead wrong." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

There is nothing even faintly fishy about Judge Martin's ruling that Goodland's delay in requesting an extension was not due to excusable neglect. Goodland was required to disclose its expert and produce the expert's report by February 2, 2015. (DE 37.) It did not do so and did not prospectively seek an extension. On March 23, 2015, Goodland emailed Kessler's counsel about agreeing to an extension of the supplemental expert report deadline. (DE 44-3 at 3; *see also* DE 42 (motion requesting extension of the deadline to supplement expert reports).) While it's possible Goodland didn't realize at that point that it had missed the initial expert deadline, there's no denying that Goodland was on notice of the screw up by March 24, 2015. That's because Kessler's counsel responded to Goodland's request for extension, saying that there was nothing for Goodland to supplement because it had neither disclosed a testifying expert nor proffered an expert report. (DE 44-3 at 2–3.)

At that point, Goodland knew there was a problem and that Kessler wasn't going to consent to an extension. Here's what Kessler's lawyers told Goodland's: "You[r] email makes no effort to state any good cause which would justify setting aside the case management order. . . I will oppose any efforts to extend deadlines, allowing your client

5

to belatedly designate a testimonial expert, as it is prejudicial to my client and you've made no effort to explain your client's disregard of the CMP." (*Id.* at 3.) The town could have come to the court and asked for relief at that point. Instead, counsel stayed silent for another month, until April 27, 2015, when he filed a second motion, this one requesting a general extension of discovery until July 1st. (DE 55.) Like Goodland's first motion to extend, this second motion did not disclose that Goodland had missed the February 2nd deadline or that Kessler had refused to agree to an extension. (*See id.* at 3, 14.) Instead, it made a generic request for an extension of the time to disclose "any Rule 26(a)(2) witnesses" until July 1, 2015 with the expert reports due that same day. (*Id.* at 14.)

In fact, Goodland did not acknowledge that it had missed the deadline until Judge Martin asked Goodland's counsel the question point-blank at the April 27, 2015 hearing, and the only explanation Goodland provided at that time was that the missed deadline was an "oversight." (*See* DE 59 at 3:15–4:10,s 11:4–12:25.) Similarly, the town filed a motion requesting the specific extension it needed only after Judge Martin ordered it to do so, and that motion—Goodland's third—did not explain why it took more than four weeks to request an extension after the omission was brought to Goodland attention on March 24th. (*See* DE 59 at 11:4–12:25; DE 60.)

This does not clear the threshold for "excusable neglect." Fed. R. Civ. P. 6(b)(1). "[T]he test as to what constitutes excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *U.S. v. Cates*, 716 F.3d 445,

448 (7th Cir. 2013) (internal quotation marks and citation omitted). Relevant factors include:

> the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993) (internal quotation marks and brackets omitted). Of course, there are situations in which missed deadlines are attributable to excusable neglect, but in those cases the omission tends to be the "result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." *Auelyaman v. Ill. State Univ.*, 667 F.3d 800, 808 (7th Cir. 2011) (internal quotation marks and citations omitted).

That is not the case here. Here, the twelve-week delay was entirely within Goodland's control, and Goodland had no real explanation for missing the deadline—a deadline that Goodland negotiated and that Judge Martin approved at a hearing in which Goodland's counsel participated. (*See* DE 34 at 4; DE 37.) In addition, granting the extension would have further delayed a case that would have been resolved by now, if only Goodland had met the deadline at the outset or sought timely relief from the court. On top of all that, Goodland's counsel was not forthright with the court about having missed the deadline until it was forced to be.

Most important, however, is that granting the extension would have prejudiced Kessler. I take to heart the Seventh Circuit's admonition that cases ordinarily should be

7

decided on their merits. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004). However, granting Goodland the extension here would have inverted the usual sequence of litigation—even if Judge Martin had granted the extension immediately after Goodland filed its motion. An Advisory Committee Note to Federal Rule of Civil Procedure 26(a)(2) makes clear that the plaintiff—which bears the burden of proof on causation—should ordinarily be required to go first when it comes to disclosing causation experts:

> Normally the court should prescribe a time for these disclosures in a scheduling order under Rule 16(b), and in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue.

*See* 1993 Amend. Advisory Comm. Note to Fed. R. Civ. P. 26 (a)(2); *see also Smetzer v. Newton*, 2012 WL 1900118, *3 (N.D. Ind. May 23, 2012). If Judge Martin had let Goodland get away with it, the town would have gained the strategic advantage of knowing Kessler's theory of the case and what Kessler's causation expert had to say before producing its own expert report because *Goodland* blew a deadline. It is this prejudice to Kessler that really drives the decision-making here.

In the end, Judge Martin concluded that Goodland's delay was "due either to extreme neglect or intentional gamesmanship by counsel for Plaintiff" (DE 72 at 4), and I can't say that ruling was clearly erroneous or contrary to law. It's one thing to forget to do something required by an order of the court, and different circumstances might justify a different result in such cases. It's an entirely different situation when a party is alerted to a

problem by opposing counsel but continues to do nothing—until he has his opponent's expert disclosures in hand. It would be inequitable to force Kessler to bear the consequences of Goodland's actions.

## Conclusion

In summary, Judge Martin's ruling denying Goodland's request for an extension of the discovery deadline (DE 72) pertained to a non-dispositive matter reviewable under Rule 72(a), and the ruling was not clearly erroneous or contrary to law. Accordingly, Plaintiff's Objection to Magistrate Ruling (DE 95) is **DENIED**.

**SO ORDERED.**

ENTERED: June 23, 2016.

 s/ Philip P. Simon<br>
CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT